**TEXAS EMPLOYERS' INS. ASS'N v. LEMONS et al.**

No. 10836.

Court of Civil Appeals of Texas. Dallas. Oct. 18, 1930.

Rehearing Denied Dec. 6, 1930.

Wm. M. Cramer, of Dallas, for appellant.

White & Yarborough, of Dallas, for appellees.

JONES, C. J.

This is a workmen's compensation case, and the suit is to set aside an award of the Industrial Accident Board in favor of O. O. Lemons, appellee, against Texas Employers' Insurance Association, appellant. The award of the Industrial Accident Board allowed the statutory compensation for the specific injury of hernia. To appellant's suit to set aside the award, appellee filed both an answer and a cross-action alleging total and permanent disability, as the result of such injury, and sought to recover compensation allowed by statute for such injury. The case was tried to a jury, submitted on special issues, and under the findings of the jury, the court set aside the award of the said board and awarded compensation for total and permanent disability, and also decreed that such compensation should be paid in a lump sum. The appeal is duly prosecuted to this court. The following is a sufficient statement of the facts:

At the time of his injury appellee was 22 years of age, married, and was employed by Olive & Myers Manufacturing Company, in Dallas, as a trucker; preceding the injury he was a strong, healthy, able-bodied man and had never suffered from a hernia. Olive & Myers were qualified to become a subscriber under the Workmen's Compensation Law and had taken out compensation insurance with appellant. On November 1, 1928, appellee, while working within the scope of his employment, and when loading in a truck a crate of glass weighing from 500 to 1,000 pounds, suffered a hernia on his left side. This injury immediately manifested itself by pains and by the protrusion usual to a hernia. This injury was reported to appel-lee's employers on the following day, and a claim for compensation was seasonably filed with the Industrial Accident Board and with appellant. After interviews between appellee and a representative of appellant, appellee's request for an operation was denied and appellant disclaimed liability for any injury. On a hearing, the board entered the above named award.

Appellee's testimony discloses that since he suffered the hernia he has been restless at night, suffers pains, and is nervous. He worked until the following October, nearly a year, in his same employment, doing substantially the same character of work as theretofore done by him, except that he was unable to do as heavy lifting as he had done. Except for two or three weeks, he has continued to work as a truck driver for other employers and, at the time of trial, was working as a truck driver for a furniture company, at a wage a little higher than that which he received at the time of his injury. Appellee testified that all of the work performed after the injury was done through necessity and during its performance he suffered pain. He was fitted with and wears a truss, which apparently prevents protrusion and allows him to perform his work.

The medical testimony offered by appellee was given by Dr. Cooke. This testimony shows that, shortly after the injury, he examined appellee, found him suffering from what he described as a direct inguinal hernia on the left side, produced by a tear of the structure making up the wall of the abdomen. He described the usual and common effect of such a hernia as follows:

"The character of hernia that I found from my examination produces not only local pains, but produces general nervous symptoms by virtue of the fact that the gut is protruding through there or tending to protrude through, unless they are retained by some proper truss, producing a pull on the nerves of the sympathetic system, which supply the gut, and having a general effect on his nervous system, producing discomfiture, sharp pain and nausea. It will cause vomiting and a general upset condition."

This witness also testified: "I don't think this man can do manual labor without suffering pain. The last time I examined him was yesterday, and the opening through which this protrusion came was some larger than on my first examination; he had held the gut up with a truss and when it was removed, of course, it came through down into the scrotum." Dr. Cooke expressed doubt as to the success of an operation and went rather fully into this question, giving his reasons for such conclusion. His doubt related only to the character and condition of the hernia, and not

to any general physical condition of appellee.

Two medical witnesses testified in behalf of appellant, viz.: Dr. Carter, who was the first physician to examine appellee after the injury and made the examination at the instance of appellee's employers, and Dr. Dupuy, who examined appellee at the instance of appellant. Each of these witnesses testified to the existence of the hernia, but described it as an oblique inguinal hernia. Each also testified that appellee was a fit subject for an operation, and that the chances were decidedly in favor of a complete cure from such operation.

Appellant requested and the court gave the following special issue:

"Issue No. 1: Do you find and believe from the evidence that O. O. Lemons does not have any disease or any physical condition which would render an operation for him more than ordinarily unsafe? Answer 'yes' or 'no.' Answer 'No.'"

Appellant contends that, by the answer to this issue, the jury found that appellee did not have any disease or physical condition that would render an operation more than ordinarily unsafe. On the other hand, appellee contends that the jury made the opposite finding. The manner in which the question is framed, together with the requirement to answer same "yes" or "no," necessarily leaves the matter in doubt as to the meaning of the jury's answer. If we paraphrase the jury's verdict on this issue, it would read, "We do not find and believe from the evidence that O. O. Lemons does not have any disease or any physical condition which would render an operation for him more than ordinarily unsafe." There are too many negatives, even when it is thus paraphrased, to determine with precision the answer intended. We must therefore disregard this answer. As the case must be reversed on another issue, we will state that, in the present record, this issue is not raised.

The findings of the jury on the special issues are: (1) Appellee sustained accidental injuries on or about November 1, 1928; (2) such injuries were sustained in the course of his employment; (3) the injury sustained resulted in hernia on or about the 1st day of November, 1928; (4) the hernia appeared suddenly and immediately following the injury; (5) the hernia did not exist in any degree prior to the injury; (6) the hernia was accompanied by pain; (7) he sustained total incapacity on or about November 1, 1928; (8) the total incapacity naturally resulted from the injury sustained on the occasion in question; (9) the total incapacity sustained will be permanent; (10) the failure to pay for the injuries suffered by appellee will cause a manifest hardship and injustice to him; (11) appellant is not en-

titled to any discount on such lump sum settlement; (14) appellee's employers received notice of the injuries within 30 days after November 1, 1928; (15) appellee made claim for compensation for his injury to appellant within six months after the 1st day of November, 1928; (16) the average daily wage of appellee is $3.50. These findings, except Nos. 7 to 11, inclusive, are sustained by the evidence and are adopted as the findings of this court.

■ The controlling question for decision in this case is that presented by issues 7 to 11, inclusive, and in legal effect is, whether appellee should be confined to the specific injury of a hernia, and allowed only the compensation provided in section 12b, art. 8306, supra, or whether he should be compensated for a general injury. The article cited makes hernia a specific injury and prescribes the measure of damages for such an injury. A recovery cannot be had in excess of the amount therein prescribed, even though the effect of such injury be total incapacity for the employee's accustomed work extending over a period of time in excess of the time for which remuneration is allowed. Standard Acc. Ins. Co. v. Williams (Tex. Com. App.) 14 S.W.(2d) 1015; Petroleum Casualty Co. v. Seale (Tex. Com. App.) 13 S.W.(2d) 364. However, if the employee has suffered a specific injury such as hernia, and at the same time suffered other injuries, or such specific injury has involved other portions of the body to such an extent as to cause an injury additional to the hernia, such an employee may recover the compensation allowed for what is termed a general injury. Authorities above cited, and Ætna Life Ins. Co. v. Bulgier (Tex. Civ. App.) 19 S.W.(2d) 821.

■ To state the rule as it specifically applies to a hernia injury: If the result of the hernia be such as produces only the physical condition, which is the common and recognized result accompanying and following a hernia, then the injury is specific and the recovery cannot exceed the statutory allowance for such specific injury.

■ Applying this rule to the instant case, we are unable to find any evidence tending to establish that the physical results of the hernia suffered by appellee were other than those usually and ordinarily accompanying such an injury. The evidence above quoted from Dr. Cooke's testimony clearly shows that the nervousness, inability to sleep and pains accompanying his work, and his incapacity for manual labor are the results that follow a hernia of the character appellee received on the occasion in question. Neither appellee's wife nor appellee himself complained of any other results affecting appellee during the time he was injured. To transform a specific injury into a general injury, when the result of such specific in-

jury is that which commonly and usually follows such injury, would be, in effect, to set aside a plain legislative enactment. It must be presumed that the Legislature, contemplated the common and usual results from a hernia when section 12b, art. 8306, was enacted. We sustain the assignments of error addressed to this issue.

It was error for the court to submit to the jury special issue No. 11, as to whether appellant was entitled to any discount on the present payment of future weekly installments. When a lump-sum payment is allowed, the injured employee must be given 6 per cent. interest on the past-due payments, and the compensation carrier must be allowed a discount on the future payments; such allowance must be a sum of money that represents the present worth of the future payments.

We have examined all other assignments of error and find no reversible error therein pointed out. The case must be reversed and remanded for the error above pointed out, with instruction to the trial court that, if the evidence is substantially the same as that introduced in the instant case, the case must be controlled by section 12b, art. 8306, supra.

Reversed and remanded.